### JORDAN v WHITING CORPORATION

1. WITNESSES—EXPERT WITNESSES—QUALIFICATIONS—DISCRETION.

A ruling upon a witness's qualifications to give expert testimony is within the trial judge's discretion and, absent an abuse of that discretion, the judge's ruling prevails upon appellate review.

2. WITNESSES—EXPERT WITNESSES—QUALIFICATIONS.

Allowing plaintiff's witness, an engineer, to testify as an expert witness entitled to give opinion evidence on whether the electrocution of plaintiff's decedent could have been avoided had trolley crane bars carrying the electricity been covered with an insulating material was not an abuse of discretion even though the witness's qualifications were seriously challenged on cross-examination and in some instances he was forced to retract his previous testimony although he never retracted his basic opinion that insulation on the bars would have prevented the electrocution.

3. NEGLIGENCE—WITNESSES—EXPERT WITNESSES—QUESTION OF FACT.

Conflicting opinion evidence from two expert witnesses regarding the adequacy of insulation on trolley crane bars carrying electricity and the relationship of insulation to the death of plaintiff's decedent by electrocution in an industrial accident raised an issue of fact for the jury; therefore, granting a new trial to plaintiff after directing a verdict for defendants, the manufacturer, seller, and installer of the crane was not error.

Appeal from Wayne, Nathan F. Kaufman, J. Submitted Division 1 June 12, 1972, at Detroit. (Docket No. 11580.) Decided August 28, 1972.

Complaint by Thelma L. Jordan, administratrix

REFERENCES FOR POINTS IN HEADNOTES

[1] Review on appeal of decision of trial court as to qualification or competency of expert witnesses, 166 ALR 1067.

[1, 2] 31 Am Jur 2d, Expert and Opinion Evidence § 31.

[3] 31 Am Jur 2d, Expert and Opinion Evidence § 41.

of the estate of John C. Jordan, deceased, against Whiting Corporation, Dearborn Fabricating & Engineering Co., and N & K Electric Company for negligence and breach of implied warranty of fitness in the electrocution of decedent. Lumbermens Mutual Casualty Co. intervened as a party plaintiff. Judgment on directed verdict for defendants. Plaintiff appealed. Remanded for limited reconsideration of decedent's due care for his own safety. The trial court reversed its prior holding and granted plaintiff a new trial. Defendants appeal. Affirmed.

*Lopatin, Miller, Bindes & Freedman (Michael H. Feiler, of counsel),* for plaintiff.

*Plunkett, Cooney, Rutt & Peacock,* for defendant Whiting Corporation.

*Butzel, Long, Gust, Klein & Van Zile* (by *James D. Ritchie),* for defendant Dearborn Fabricating & Engineering Company.

*Vandeveer, Doelle, Garzia, Tonkin & Kerr,* for defendant N & K Electric Company.

Before: V. J. BRENNAN, P. J., and QUINN and O'HARA,* JJ.

O'HARA, J. What started out as a conventional appeal of right by a plaintiff from a verdict directed against her in a suit for damages based on negligence and implied warranty has burgeoned into a vexatious procedural labyrinth. We will try to extricate from it those issues which have some general application to our jurisprudence.

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

This is how it all came about. Back in 1960 John Jordan was electrocuted while at work on what we will call, for simplicity's sake, an overhead trolley crane.

For reasons that are not of record here, his claim for workmen's compensation death benefits was redeemed for $8,100. The compensation claim was against C. A. Roberts Co., owner of the premises in which the crane above-mentioned had been installed.

After the petition for redemption had been approved and paid, Mrs. Jordan, the present plaintiff, started an action for damages against Roberts on the ground that her deceased husband was an independent contractor and not an employee of Roberts. By a divided Supreme Court, both on original hearing and rehearing, it was held that, had the suit been initiated in the circuit court *before* the adjudication by the Workmen's Compensation Appeal Board that Roberts was an employee, a question of fact as to what his status was might well have existed. However, since the appeal board determined the deceased to have been an employee, the subsequent tort action was barred by the exclusive remedy of the act. See *Jordan v C A Roberts Co (On Rehearing)*, 381 Mich 91 (1968).

Thereupon, Mrs. Jordan, as administratrix of his estate, brought this suit against defendant Whiting, manufacturer of the crane, defendant Dearborn as Whiting's distributor and in part fabricator or assembler of the components, and seller of the crane to Roberts, and N & K Electric as the electrical contractor which did the wiring that energized the unit electrically.[1]

---

[1] We do not discuss the role of Lumberman's Mutual Casualty Co., intervening plaintiff, in the case since it is in no wise decisionally relevant.

After seven days of trial and nearly a thousand pages of transcript, the trial judge first directed a verdict against N & K. Then he reconsidered and directed a verdict for all three defendants.

Appeal from that directed verdict was taken of right. While that appeal still impended a motion was made in this court to remand the case to trial court for the purpose of making a motion for a new trial in *that* court. The motion in this case came on for hearing on a special motion docket. In support of this motion to remand it was represented to the panel hearing the motion that the trial court held that "decedent was somehow contributorily negligent". This was a clear misstatement. We attribute no improper motive to the misstatement but rather attribute it to the fact that appellate counsel may well have not had an opportunity to scrutinize the vast record, which at that time was not available to this Court. Disposition of the motion was made October 28, 1970. Just 20 days prior thereto this Court had released to the parties the opinion in *Wirtanen v The Prudential Insurance Company of America,* 27 Mich App 260 (1970). The panel was thus understandably concerned whether the trial judge and all counsel had *Wirtanen* available because it discussed the evidentiary weight to be accorded presumptions. Since in this case there were no witnesses to the fatal accident, the presumption that decedent was in the exercise of due care for his own safety was highly relevant to the issue of the claimed holding as to his contributory negligence. The panel issued an order which provided in pertinent part:

"1) It is ordered that this cause be remanded to the trial court for further consideration in light of *Wirta-*

*nen v Prudential Insurance Company of America,* our
docket #7134, released Oct. 8.

"2) The *appeal* in this matter is hereby dismissed
without prejudice to the rights of either party to file a
motion to reinstate this cause in the Court of Appeals."
(Emphasis added.)

Instead of considering only the presumption of due
care as it bore on the issue of decedent's claimed
contributory negligence the trial judge read the
limited order of remand to mean that he should
reconsider the whole issue of granting directed
verdicts as to all these defendants. He reversed his
prior holding and granted plaintiff a new trial on
the general ground that the minds of reasonable
men could differ on the whole issue of negligence
and breach of warranty of fitness.

In this particular we think the learned trial
judge was in error. However, the point becomes
academic because in this case *after* the order of
limited remand was entered a second order was
issued[2] reinstating the case in the Court of Ap-
peals as an appeal of right from the order of the
trial judge granting a new trial.

Obviously, this put the procedural shoe on the
other foot. Its effect was to make the former
appellant the appellee and the three named de-
fendants appellants rather than the appellees.
With this exception the case went back to its
status before the limited remand order was en-
tered. It perhaps should be noted that the issue we
decide here, namely the propriety of the grant by
the trial judge of a directed verdict, would have
come before us anyway because Mrs. Jordan had
claimed appeal of right from the directed verdict
against her *before* she filed the motion to remand

---

[2] From which I dissented.

to the trial court for reconsideration of the grant thereof.

So now the question before us is whether, on most favorable view of all the testimony, plaintiff presented a jury-submissible issue when she rested her case in chief.

We dispose first and summarily of the issue of decedent's alleged contributory negligence. We quote the trial judge:

"All we know is he [decedent] was there, and there is a presumption of due care. I'm not ruling that he was negligent as a matter of law: I'm not ruling he was contributorily negligent."

We agree. So much for *Wirtanen* and its introduction into the ruling on the directed verdict. *Wirtanen,* by any test, was complied with fully in the court below.

Hence, we direct our attention now to the testimonial support of plaintiff's claim of improper design, faulty installation and improper selection of material for manufacture.

We said earlier we would attempt to pinpoint the issue or issues of jurisprudential significance to emerge from this hotly contested case. Some of the Detroit area's most highly regarded counsel in their respective fields used all of their abundant talents to sustain their respective positions. The able and experienced trial judge was called upon to make many on-the-spot rulings at times when it was difficult to tell when the defendants were acting in concert, and when they were in effect adversaries. Each defense counsel on oral argument before this Court stressed the length of time this litigation has been in progress. All urged us to put an end to it. Would that we could. It is not to our liking that another lengthy trial involving the

bereaved widow, her two children, the experts qualified to testify to opinion evidence, the painstaking and costly preparation for presentation and defense and the adroit direct and cross-examination be repeated again in a trial court. Like it or not, it is our responsibility to assure final disposition within the controlling law, as we see it, if it take till Great Birnam Wood come to Dunsinane.

In our view, this case is controlled by recently published *Ramsey v DiLegge & Sons, Inc,* 39 Mich App 385 (1972) (as well as many similar previous holdings). In this case Stephen S. Squillace was qualified as an expert witness and thus entitled to give opinion evidence. He is an engineer. A separate, lengthy direct and searching cross-examination brought out his qualifications and the limitations thereof. In the end the trial judge ruled him an °expert witness allowed to express his opinion on the crucial questions asked him.

"*(Plaintiff's counsel):* I will ask you Mr. Squillace if you have an opinion as to whether or not the rods or bars carrying the electricity were covered with an insulating material, could that have prevented Mr. Jordan's electrocution?

*(Objections by all defendants.)*

"*(The Court):* * * * I will overrule the objection.

"*(The witness):* Yes. If the bars had been covered or insulated they could have prevented the accident."

It cannot be gainsaid that serious challenges to the witness's qualification were made through cross-examination. The ruling upon his qualification resided in the discretion of the trial judge. We cannot say that holding him qualified was an abuse of discretion.

We are not unmindful that defense counsel, with withering cross-examination, attacked the basis for

the witness's opinion and in some instances forced a retraction of previous testimony, but his basic opinion was never retracted.

Further, another engineer, Lorne Finlayson, testified point blank that the power rail had to be bare or it could not function. One defense counsel asked Mr. Squillace:

> *"(Defense counsel) Q.* Did you hear Mr. Finlayson tell us that the power rail is bare, 'It has to be', did you hear him say that?
> *"A.* Yes I think I remember that.
> *"Q.* I thought you might. You disagree with him.
> *"A.* I disagree with that."

Where else can the weight to be given to the conflicting testimony of the witnesses be resolved but in the jury room?

In previously mentioned *Ramsey* we said:

> "Despite defense counsel's vigorous argument as to the inadequacy of the hypothesis, and the claimed invasion of the province of the jury, we cannot but conclude that once the expert's testimony was properly admitted an issue of fact as to its weight and credibility was created. The assessment of that weight and credibility was perforce for the jury." *Ramsey, supra,* pp 388–389.

And so to it is here. Qualified opinion evidence was introduced. Not even hypothetically but directly the expert testified to inadequacy of insulation and its relationship to the death of plaintiff's intestate. Another expert testified *contra:* the issue was one of fact for the jury.

In this case the trial judge in an addendum to his opinion requested that in the event his ruling granting a new trial were affirmed, and the case remanded for further proceedings, it be assigned to another trial judge. We agree that it should be.

The trial judge who presided of necessity made many rulings to which exception was taken and as to which error was claimed. Because of the issue we found controlling we did not pass upon them. It is in the interest of all parties that if the case is retried another judge preside. We so direct.

The order of the trial judge granting a new trial is affirmed. Plaintiff may tax costs.

All concurred.