**Ronald Dean CHILDRESS, and Peggy Childress, Plaintiffs,**

v.

**GRESEN MANUFACTURING COMPANY, A wholly owned SUBSIDIARY OF DANA CORPORATION, Defendant.**

**No. 87–CV–72418–DT.**

United States District Court, E.D. Michigan, S.D.

July 26, 1988.

Sanford N. Lakin, Southfield, Mich., for plaintiffs.

Thomas Cardelli, Detroit, Mich., for defendant.

MEMORANDUM ORDER
AND OPINION

ZATKOFF, District Judge.

Plaintiffs Ronald Dean Childress and Peggy Childress, his wife, bring this action against Gresen Manufacturing Company, a wholly owned subsidiary of Dana Corp. (Gresen). Plaintiffs assert a product liability claim. Plaintiff Ronald Childress lost his right thumb and both of his legs while

operating a log splitter. Defendant Gresen Manufacturing Co. manufactured a component part to the log splitter.

■ Currently before the Court is Defendant's motion for summary judgment. Summary judgment is appropriate where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. *Blakeman v. Mead Containers,* 779 F.2d 1146 (6th Cir.1985); Fed.R.Civ.P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 U.S. 2548, 2552–2553, 91 L.Ed.2d 265 (1986). In applying this standard, the Court must view all materials offered in support of a motion for summary judgment, as well as all pleadings, depositions, answers to interrogatories, and admissions properly on file in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *United States v. Diebold,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Cook v. Providence Hosp.,* 820 F.2d 176, 179 (6th Cir.1987); *Smith v. Hudson,* 600 F.2d 60 (6th Cir.1979), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). In deciding a motion for summary judgment, the Court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512. Although summary judgment is disfavored, this motion may be granted when the trial would merely result in delay and unneeded expense. *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *A.I. Root Co. v. Computer/Dynamics, Inc.,* 806 F.2d 673, 675 (6th Cir.1986). Where the non-moving party has failed to present evidence on an essential element of their case, they have failed to meet their burden and all other factual disputes are irrelevant and thus summary judgment is appropriate. *Celotex,* 477 U.S. at 322–24, 106 S.Ct. at 2553; *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (footnote omitted)).

## FACTS

Ronald Childress sustained his injuries while operating a log splitter. A typical log splitter consists of numerous component parts. The main section of the log splitter is the beam. The beam holds the log in place while the log is being split. At one end of the beam is a wedge. The wedge is a knife-like object that remains in a stationary position. At the opposite end of the beam is a push pad. The push pad is a mobile object which moves along the beam toward the wedge. The push pad forces the log into the wedge, thereby causing the log to split. The push pad is connected to a cylinder. The cylinder obtains its power from a hydraulic fluid pump. A control valve is used to channel the fluid and the cylinder in a desired direction.

The log splitter that caused Plaintiff's injuries was manufactured by LaFont Log Splitting Company (LaFont). The initial log splitters manufactured by LaFont incorporated a hydraulic directional control valve that would permit one automatic cycle of the push pad without constant operator pressure on the handle. In other words, the original LaFont log splitters were designed without a deadman's control.

LaFont designed the auto-cycle splitters by incorporating a two-handle system with a latch mechanism. If both handles were moved forward the latch mechanism would hold the control valve in a forward direction until the log was split. A second mechanism would then release the locked handles and move the control valve in the

reverse direction. When the push pad fully retracted, a third mechanism moved the control valve to neutral. The cycle could be repeated by moving both handles forward.

In 1976 LaFont retained Defendant Gresen Manufacturing to provide LaFont with a control valve that could complete an automatic cycle without the dual handle and various mechanisms required to perform an automatic cycle under the LaFont design. Gresen provided LaFont with a control valve that featured a spring extension with a "knock-out" to the reverse position (spring extension valve). By using the spring extension valve, the log splitter could operate with a single handle. When the operator pushed the handle forward, the push pad would extend toward the wedge. Once fully extended, the handle would automatically spring into the reverse position, causing the push pad to retract. The handle would then settle in the neutral position.

The original two-handle LaFont log splitter and the modified single handle LaFont log splitter performed identical functions, i.e. both performed by automatic cycle.

The LaFont log splitter involved in this accident was the single handle model that incorporated the Gresen spring extension valve. On February 3, 1984, Plaintiff Ronald Childress was employed by a person in the business of selling firewood. Childress' job assignment was to split logs. He had been performing this function for approximately one month, and was acquainted with the proper method to operate the log splitter. Childress placed a log on the beam of the splitter. He was holding the log in place with his right hand after he commenced the operation of the splitter. As the push pad moved the log toward the wedge, Childress' right thumb became caught between the wedge and the log, causing his thumb to be amputated. He then became weak and unstable and fell across the beam of the log splitter. Throughout this time Childress attempted, without success, to reach the control handle to stop the progression of the push pad. The push pad continued forward forcing Childress' legs against the wedge, resulting in severe injuries to his legs. The injuries were so extensive that the amputation of both of his legs was eventually necessary.

Plaintiffs initiated the instant suit in Oakland County Circuit Court on May 8, 1985, against numerous defendants, including a Michigan defendant. On June 9, 1987, the state court entered an order of dismissal of the Michigan defendant. On June 29, 1987, Defendants Gresen and Tonka Company joined to properly remove to this Court pursuant 28 U.S.C. § 1441; 28 U.S.C. § 1332. On the date of removal only Gresen and Tonka Co. remained as defendants to this action. On April 6, 1988, an Order was entered pursuant to a stipulation between the parties that the liability of Defendant Tonka Co., would be vicarious to that of Defendant Gresen, and that if a judgment is rendered against Gresen, that judgment shall be joint and several as against Tonka Company and Gresen. Thus, the only remaining issue is whether Gresen is subject to liability resulting from this unfortunate accident.

The Complaint does not allege that the valve malfunctioned or that the valve could and should have incorporated certain safety devices. Plaintiffs are not alleging that the valve was defectively designed or manufactured. Alternatively, Plaintiffs assert that Gresen was negligent in supplying La-Font with the spring extension valve because it enabled an operator of the log splitter to activate and maintain a complete cycle without the necessity of constant operator pressure on the handle. Plaintiffs claim that this negligence proximately caused the accident. It is Plaintiffs' contention that because Gresen knew that the spring extension valve would allow a log splitter to perform an automatic cycle, Gresen had a duty to consider whether incorporation of its product into the LaFont log splitter would create an unreasonable risk of danger to the user.

## OPINION

Defendant sets forth two reasons to support its claim that as a manufacturer of a

component part, Defendant had no duty to analyze the operation of the log splitter to determine whether a foreseeable unreasonable risk of harm existed.

First, Defendant relies upon *Huff v. Ford Motor Co.*, 127 Mich.App. 287, 338 N.W.2d 387 (1983), to argue that "a manufacturer, who supplies a component pursuant to another's specifications, does not have a duty independent from the completed product manufacturer to analyze the design of the completed product, and is not liable for its design, unless its operation is so dangerous that no reasonable company would have supplied the component part." Defendant's Brief in Support of Summary Judgment, p. 8.

Defendant miscontrues the holding of *Huff v. Ford Motor Co., supra.* Moreover, *Huff* is inapplicable in the instant case.

In *Huff,* plaintiff's decedent died as a result of injuries sustained while employed as a subcontractor at Ford Motor Co. The accident resulted when fumes from a coating the decedent was applying to the inside of an oily waste treatment tank ignited. A wrongful death action was commenced against several defendants including Ford Motor Co. and the manufacturer of the tank. Plaintiff alleged the manufacturer negligently designed the tank by failing to incorporate safety ventilation and lighting systems into the tank. The trial court granted summary judgment in favor of the manufacturer because the tank manufacturer merely constructed the tank. The design of the tank was provided by Ford Motor Co., the ultimate purchaser of the tank.

The appellate court reversed because summary judgment was granted before the close of discovery. However, in reversing the appellate court noted that Michigan recognizes an exception to the general rule that a manufacturer owes a duty to users of its product to furnish a product which is not unreasonably dangerous when used in a manner intended or in a manner reasonably foreseeable by the manufacturer. The *Huff* court relied on Prosser, Law of Torts (4th ed.), § 104, p. 681 to explain this exception:

> [The] contractor is not liable if he has merely carried out carefully the plans, specifications and directions given him, since in that case the responsibility is assumed by the employer, at least where the plans are not so obviously defective and dangerous that no reasonable man would follow them. Where this is the case, there appears to be no doubt that there will be liability.

*Huff,* 127 Mich.App. at 295, 338 N.W.2d 387. Therefore, the appellate court remanded the case for further discovery and directed that:

> in order to withstand summary judgment ... plaintiff must support her claim on the record with facts tending to show that defendant Cunningham's design and specifications were obviously dangerous and defective ...

The policy behind the *Huff* directive is that a company that merely constructs a product that is designed by another should not be found liable for a defect in that design unless the design was obviously dangerous and defective.

■ Contrary to Defendant's assertions, the *Huff* case does not support the proposition that one who supplied a component product does not have a duty independant from the completed product manufacturer to analyze the design of the completed product. The duty of a component product manufacturer is not addressed in *Huff.* Albeit *Huff* may be applicable to a component product manufacturer that manufactures a product pursuant to the design and specifications of the completed product manufacturer, such an application of *Huff* is not supported by the facts of this case. Defendant disingenuously argues that in providing the spring extension valve to LaFont, Defendant merely followed the specifications of LaFont. However, the policy of *Huff* does not allow for such a liberal interpretation of the term "specifications." As previously stated, the policy of *Huff* is to place liability for a defectively designed product on the designer of that product, not the manufacturer. In the instant case, LaFont did not design the spring extension valve. LaFont requested Gresen to supply

it with a product to allow an automatic cycle. Gresen supplied LaFont with the spring extension valve, a valve designed by Gresen. Thus, any liability for a defect in the design of the valve must, pursuant to *Huff,* be placed on Gresen since Gresen was the designer of the product.

*Huff* is also inapplicable in the instant case because Plaintiff does not assert a claim for the defective design of the spring extension valve. To the extent *Huff* is applicable to a component product liability scenario it is only applicable to an alleged defect in the component product, not a defect in the completed product. Since Plaintiff does not assert a defect in the design of the spring extension valve, Defendants' reliance upon *Huff* is misplaced.

■ Defendant's second argument for summary judgment is more meritorious. Defendant submits that a manufacturer of a component part has no duty to analyze the design of the completed product. Defendant submits that this duty rests solely upon the manufacturer of the completed product.

This Court agrees.

The issue of the liability for a component product manufacturer for the negligence in the overall design of a completed product was addressed in *Jordan v. Whiting Corp.* (*On Rehearing*), 49 Mich.App. 481, 212 N.W.2d 324 (1973), *rev'd in part on other grounds* 396 Mich. 145, 240 N.W.2d 468 (1976). In *Jordan,* plaintiff brought suit against the manufacturer of component parts used in a crane. The component parts themselves were not defective in design or manufacture. Plaintiff asserted that the completed crane was defectively designed and manufactured. The trial court granted a directed verdict. The directed verdict was affirmed on appeal. The appellate court held:

> [t]he obligation that generates the duty to avoid injury to another which is reasonably foreseeable does not—at least yet—extend to the anticipation of how manufactured components not in and of themselves dangerous or defective can become potentially dangerous dependent upon the nature of their integration into a unit designed, assembled, installed, and sold by another.

*Jordan,* 49 Mich.App. at 486, 212 N.W.2d 324.

Plaintiffs at bar seek to impose liability based upon the reasoning expressly rejected by the *Jordan* court. Plaintiffs assert that Defendant owed them a duty to investigate whether the use of Defendant's non-defective product would be made dangerous by the integration of that product into the log splitter designed and assembled by LaFont. This Court finds no such duty.

In essence it is Plaintiffs' argument that a component product manufacturer is legally held to the same standard of care regarding the design of a completed product as is the completed product manufacturer. Applied in the instant case, Plaintiffs submit that Gresen, a company engaged in the manufacture of hydraulic components for universal application, had a duty to determine whether the LaFont's design of the log splitter was reasonably safe for its forseeable uses and misuses. Plaintiffs argue this despite the fact that LaFont was in the business of manufacturing log splitters. It was LaFont that held the experience and expertise in designing log splitters. If Plaintiffs' theory of liability is adopted, it would be Gresen's duty to retain expert engineers to determine whether each and every completed product that incorporates a Gresen component is reasonably safe for its intended uses and misuses. This result is without legal support.

Plaintiff suggests that the case of *Scott v. Allen Bradley,* 139 Mich.App. 665, 362 N.W.2d 734 (1984) supports the proposition that "a component part manufacturer, knowing the use intended of his product, is obligated to produce a product reasonably safe for its intended use." Plaintiffs' Response Brief, p. 10. As a Michigan trial judge I presided over the bench trial in the *Scott* case. *Scott* is completely distinguishable from the case at bar.

In *Scott,* the plaintiff lost both of his hands while operating a die press. Plaintiff's job involved placing cardboard into the die press then depressing one of two

buttons located in a control box to activate the press and cut the cardboard into desired shapes. One button was the manual button. By depressing the manual button the press performed a single cycle. By depressing the second button, the automatic button, the press cycled continuously. The control box was located to the left of the die opening. Scott was in the process of working with the press when the cardboard stock knocked into the control box causing the automatic button to be activated. Unaware of this, Scott placed his hands into the press to remove the perforated cardboard. His entire right hand and most of his left hand was amputated.

Scott brought suit against the manufacturer of the control switch alleging that the control switch was negligently designed because it failed to incorporate a safety device to protect against accidentally activating the press. In *Scott*, liability was premised upon a defect in the design of the component part itself, i.e. the failure to incorporate a safety device. No such claim is made in the case at bar. Plaintiffs do not offer evidence to suggest that Gresen improperly designed the spring extension valve or that the valve should have incorpo-

rated some safety device. Rather, it is Plaintiffs' contention that Gresen was negligent in supplying a non-defective component part to LaFont without analyzing the overall design of the completed product. *Scott* simply does not support Plaintiffs' proposition.[1]

In sum, the Court finds that Defendant was not under a duty to analyze the design of the log splitter. Thus, Plaintiffs' claim that Defendant was negligent in supplying LaFont with the spring extension valve is without legal support.

## CONCLUSION

For the above stated reasons, the Court hereby GRANTS Defendant's motion for summary judgment. Judgment shall enter accordingly.

IT IS SO ORDERED.

---

**1.** Liability in *Scott* was premised upon a finding that the component part itself was defective. The finding of a defect within the design of the component precludes the *Jordan* analysis from being applied to *Scott*. As stated by the *Jordan* court:

> the obligation that generates the duty to avoid injury to another which is reasonably foreseeable does not ... extend the anticipation of how manufactured components *not in and of themselves dangerous or defective* can become potentially dangerous dependent upon the nature of their integration into a unit designed, assembled, installed, and sold by another.

49 Mich.App. at 486. (Emphasis added). Since the component part in *Scott* was defective, application of *Jordan* was completely inappropriate.

The *Scott* court, in its dicta, distinguished *Jordan* on other grounds:

> [t]he record in *Jordan* ... did not show that the manufacturer knew how the component would ultimately be integrated. See [49] Mich App [at] 486 [212 N.W.2d 324]. Here, in contrast, the trial court ruled as a matter of fact that Allen Bradley knew or should have known that the switch would be used as a power press mode selector.

*Scott*, 139 Mich.App. at 670, 362 N.W.2d 734. This Court is troubled by this distinction. The

*Scott* dicta infers that component product manufacturer liability for a non-defective component part that becomes potentially dangerous when incorporated into a unit designed, manufactured and sold by another turns upon whether the component product manufacturer knew of the final design of the completed product. If this was law, the courts would encourage ignorance on the part of the component manufacturer. Component manufacturers would want to sell their product with blinders on. Any information regarding the use of the component product in the completed product would open the door to liability against the component manufacturer. To protect against this liability, the component manufacturer would be forced to retain an expert in its client's field of business to determine whether the client intends to develop a safe product. This result is far too overreaching and unsupported by the overwhelming majority of products liability law.

This Court would agree with the *Scott* court that the inquiry of whether the manufacturer of a component part knew or should have known the intended use of the component part is relevant, but it is relevant only to the extent that Plaintiff is alleging a defect in the design or manufacture of the component part. Plaintiffs at bar are not alleging such a defect.