Ellanetta CASTALDO, as widow of Charles J. Castaldo, and as Administratrix of the Estate of Charles J. Castaldo, Deceased, Plaintiffs below, Appellants,

v.

PITTSBURGH–DES MOINES STEEL COMPANY, INC., a Pennsylvania Corporation, and Lummus Company, a New York Corporation, Defendants below, Appellees.

Supreme Court of Delaware.

Submitted March 22, 1977.

Decided July 1, 1977.

Russell J. Willard, Jr., of Hastings & Willard, Wilmington, and Stanley B. Gruber of Freedman, Lorry, Vigderman, Weiner & Sovel, Philadelphia, Pa., of counsel, for plaintiffs below, appellants.

Stephen P. Casarino of Tybout & Redfearn, Wilmington, for defendant below, Pittsburgh-Des Moines Steel Co., appellee.

William F. Taylor and James B. Tyler, III, of Young, Conaway, Stargatt & Taylor, Wilmington, for defendant below, Lummus Co., appellee.

Before HERRMANN, C. J., DUFFY and McNEILLY, JJ.

HERRMANN, Chief Justice:

In this wrongful death action, brought under theories of negligence and strict liability in tort, plaintiff appeals the Trial Judge's grant of summary judgment in favor of the defendants. She contends that the pleadings and depositions filed in this matter raise issues of material fact which preclude such action. We affirm.

I.

The deceased was employed as a technical assistant by Allied Chemical Corporation ("Allied"). Included among his duties was the temperature-monitoring of a storage tank containing liquid phenol. On the day of the accident, the deceased was attempting to replace a broken thermometer in the tank; the task was complicated by his inability to reach and remove the shattered pieces. Consequently, the deceased, under the mistaken belief that the thermowell was "backwelded" so as to prevent the removal of the whole unit and the escape of the tank's contents, decided to remove the portion of the thermowell in which the thermometer was encased. He proceeded to detach the thermowell with the result that the deceased was sprayed with liquid phenol. He died as a result of ingesting the toxic substance.

The storage tank in question was manufactured by defendant Pittsburgh-Des Moines Steel Company ("PDM") pursuant to a contract with Allied. The tank was to be part of a linear alkalid facility which Allied planned to build and had employed defendant Lummus Company ("Lummus") as designer and construction supervisor. In response to Allied's immediate need for a storage tank, Lummus prepared a requisition for a standard tank, and Allied awarded a construction contract to PDM therefor. Construction and installation of the tank were completed on May 14, 1965. In the meanwhile, however, Allied decided to abandon its plans for an alkalid facility and, on May 24, 1965, terminated Lummus' role as designer and construction supervisor. At the time of termination, no final decision had been made as to the type of heat-measuring device for the tank or the specific method of its installation. Those decisions were made by Allied in December 1965; the accident occurred in May 1967.

II.

The plaintiff's contentions of negligence are similar for both PDM and Lummus: to

both she ascribes design responsibility for the storage tank, a responsibility allegedly violated because of their failure to provide adequate safety precautions. Specifically, plaintiff contends that the failure to permanently backweld the thermowell, or to post a warning of the alleged dangerous latent trap, constituted design negligence.

## A.

■ Turning first to defendant PDM: the plaintiff's argument mischaracterizes the company's "design" responsibility. It is uncontroverted that, under its contract with Allied, PDM was hired to construct a storage tank of standard size built in accordance with industry specifications. The case, therefore, falls within the generally accepted rule that the manufacturer of a product, built in accordance with plans and specifications of an employer, will not be liable for damage occasioned by a defect in those specifications, unless the plans are so obviously dangerous that no reasonable person would follow them. *Ridley Investment Co. v. Croll,* Del.Supr., 192 A.2d 925 (1963); *Leininger v. Stearns-Roger Manufacturing Co.,* Utah Supr., 17 Utah 2d 37, 404 P.2d 33 (1965); *Rawls v. Ziegler,* Fla.Supr., 107 So.2d 601 (1958); *Restatement (Second) of Torts* § 404 comment (a).

Equally significant and fatal to plaintiff's claim of negligence is her failure to establish that a "defect" in the tank existed at the time PDM completed its installation. Compare *Moore v. Douglas Aircraft Co.,* Del.Super., 282 A.2d 625 (1971). If there was any negligence, the evidence established that it was due either to the unsuitability of the particular type of heat-measuring device selected or its improper installation. Neither of those decisions was made by PDM. Analogous, therefore, is the line of cases which relieves from liability a manufacturer who merely supplies a component part subsequently assembled by another in a manner creating a dangerous condition. See, e. g., *Schipper v. Levitt & Sons,* N.J. Supr., 44 N.J. 70, 207 A.2d 314 (1965);

*State Stove Manufacturing Co. v. Hodges,* Miss.Supr., 189 So.2d 113 (1966); *Jordan v. Whiting Corp.,* Mich.App., 49 Mich.App. 481, 212 N.W.2d 324, 328 (1973); *Willeford v. Mayrath Co.,* Ill.App., 7 Ill.App.3d 357, 287 N.E.2d 502 (1972). We approve that rule.

In view of the plaintiff's failure to establish a genuine issue of material fact regarding PDM's alleged negligence, we hold that summary judgment for the defendant on this issue was correct.

## B.

■ Plaintiff's claim of negligence against Lummus is similarly without merit. Dispositive is the fact that Lummus' design responsibility was terminated prior to the selection of an appropriate temperature-measuring instrument or its method of installation. We find no basis upon which to hold Lummus responsible for a design decision it never made. As was true for PDM, liability cannot be imposed upon Lummus for a dangerous condition which arose after the product left the defendant's control. See, e. g., *Schipper v. Levitt & Son, supra.* We conclude, therefore, that plaintiff has failed to adduce sufficient facts to preclude summary judgment in favor of Lummus on the issue of design negligence.

## III.

As a second basis of recovery against both defendants, plaintiff seeks damages under the doctrine of strict liability in tort. See *Martin v. Ryder Truck Rental,* Del. Supr., 353 A.2d 581 (1976). For purposes of this appeal, we assume, *arguendo,* that the doctrine is available in a wrongful death action.[1]

## A.

■ First, as to Lummus: the parties are in agreement that Lummus' services were limited to the design and construction supervision of the proposed alkalid facility. There is no allegation that Lummus was responsible for the actual construction of

1. See *Stang v. Hertz Corp.,* N.M.Super., 83 N.M. 730, 497 P.2d 732 (1972); *Elmore v.* *American Motors Corp.,* Cal.Supr., 70 Cal.2d 578, 75 Cal.Rptr. 652, 451 P.2d 84 (1969).

the storage tank involved in this accident or that Lummus provided anything more than "professional services". No case, however, has been brought to our attention wherein strict tort liability has been imposed against a defendant who has provided only professional services. Indeed, the "service-product" distinction has been determinative, the general rule being that those who sell "services" are not liable in the absence of negligence. See, e. g., *La Rossa v. Scientific Design Co.*, 3d Cir., 402 F.2d 937 (1968); *Pepsi Cola Bottling Co. v. Superior Burner Service Co.*, Alaska Supr., 427 P.2d 833 (1967); *Gagne v. Bertran*, Cal.Supr., 43 Cal.2d 481, 275 P.2d 15 (1954); *Hoffman v. Simplot Aviation, Inc.*, Idaho Supr., 97 Idaho 32, 539 P.2d 584 (1975). As Chief Justice Traynor aptly observed: "Those who hire (experts) . . . are not justified in expecting infallibility, but can expect only reasonable care and competence. They purchase service, not insurance." *Gagne v. Bertran, supra*, 43 Cal.2d at 489, 275 P.2d at 20–21. We accept this rationale and adhere to the services-products distinction in the application of the doctrine of strict liability in tort.

There being no issue of material fact with regard to this claim, summary judgment in favor of defendant Lummus was proper on the issue of strict tort liability.

### B.

 Unlike the Lummus situation, it may not be disputed that PDM supplied a "product" rather than a "service." Cf. *Pittsburgh-Des Moines Steel Co. v. Brook Haven Water Co.*, 7th Cir., 532 F.2d 572 (1976) (1 million gallon water tank was a sale of goods within Uniform Commercial Code). We conclude, nevertheless, that the doctrine of strict tort liability is inapplicable to PDM. This conclusion is mandated by the plaintiff's failure to establish the existence of a "defective condition," a prerequisite element to any recovery under

that theory. See *Martin v. Ryder Truck Rental, supra.*[2]

Accordingly, summary judgment in favor of PDM on the issue of strict liability was proper.

Affirmed.

---

**2.** As a result of plaintiff's failure to establish the primary element of strict tort liability, we expressly abstain from deciding whether Delaware accepts the doctrine of strict tort liability in situations other than bailment-lease of a motor vehicle. It is noteworthy, too, that the legislative-preemption problem does not arise here because the transaction occurred prior to the effective date of the Uniform Commercial Code. See *Martin v. Ryder Truck Rental, supra.*