**Nasirud-Din Daud ABDUL-WARITH and Doris Abdul-Warith, h/w**

v.

**ARTHUR G. McKEE AND COMPANY.**

Civ. A. No. 77–2883.

United States District Court, E. D. Pennsylvania.

March 31, 1980.

308

Alan M. Herman, Philadelphia, Pa., for plaintiff.

John F. McDevitt, Jr., Philadelphia, Pa., for defendant.

## OPINION

LUONGO, District Judge.

Plaintiffs in this products liability action seek recovery for injuries attributed to a defectively designed skip bridge, which is a component of the blast furnace unit used in the production of steel. At the time of the injury, plaintiff-husband was an employee of United States Steel Corporation (U. S. Steel). Defendant Arthur G. McKee & Company (McKee) is an engineering and contracting firm, which designed and constructed the skip bridge under a contract with U. S. Steel. The complaint premises liability on three theories: (1) negligence, (2) strict liability under § 402A of the Restatement (Second) of Torts,[1] and (3) breach

---

1. Restatement (Second) of Torts § 402A provides:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product,

of warranty. Jurisdiction is based solely on diversity of citizenship.[2]

The case is presently before me on defendant's motion for summary judgment on the section 402A and breach of warranty claims. At oral argument on the motion, plaintiffs conceded that the breach of warranty claim was barred by the statute of limitations. With respect to the section 402A claim, I advised plaintiffs of my difficulties with their theory of defective design and gave them time to submit additional material to support their argument. Now, after reviewing the entire record, including the deposition testimony recently submitted, and after considering anew the arguments raised in the memoranda, I conclude that defendant is entitled to summary judgment on the section 402A claim.

The evidence of record, which must be viewed in the light most favorable to plaintiffs, reveals the following facts. In the early 1950's, defendant McKee designed and erected two blast furnaces at the U. S. Steel plant in Fairless Hills, Pennsylvania, pursuant to an agreement with and in accordance with specifications prepared by U. S. Steel. Each blast furnace unit comprised a number of structural components in addition to the furnace. Among the supporting structures for each unit were a stockhouse, a skip bridge (the item at issue here), and skip cars. The skip bridge was composed of two sets of steel rails fabricated by U. S. Steel. These rails formed a track along which the skip cars (also manufactured and supplied by U. S. Steel) traveled, carrying materials from the stockhouse to the blast furnace. As originally constructed, the bridge was equipped with a solid steel wheel-guard plate that extended along the outer rail of the bridge throughout the entire skip pit area to a height of two feet or so from the top of the rail. The guard plate was designed and positioned to prevent inadvertent contact with the rails of the skip bridge.

On October 7, 1975, Abdul-Warith was working in the skip pit near an extension of the skip bridge. He was injured when he placed his hand on one of the rails as a skip car was descending the track; his hand was pinned between the rail of the bridge and the wheel of the car. At the time of the accident, the guard plate was missing from the bridge, and there was neither a barrier to prevent the workers in the skip pit from touching the rails nor a warning device to alert them of the skip car's descent.

Plaintiffs' claim under section 402A is that the skip bridge was defectively designed because it lacked an adequate safety device. Defendant advances two arguments in support of its motion for summary judgment. It contends, first, that section 402A is inapplicable because McKee is not a "seller" and the skip bridge is not a "product," as those terms have been interpreted by the Pennsylvania courts. In the alternative, McKee asserts that because the skip bridge was originally equipped with a steel guard plate to prevent accidents like Abdul-Warith's, the bridge was not in a defective condition when delivered to U. S. Steel. I will address each of defendant's arguments in turn.

### A. The Scope of § 402A in Pennsylvania

The evolving Pennsylvania case law, which supplies the substantive authority in

and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

2. Plaintiffs allege that they are domiciled in New Jersey and that defendant is incorporated in a state other than New Jersey. Defendant argues that these allegations are insufficient to support jurisdiction in diversity. I agree. The diversity statute provides that a corporation is deemed to be a citizen of both the state of incorporation and the state in which it has its principal place of business. 28 U.S.C. § 1332(c) (1976). The Court of Appeals for the Third Circuit has construed § 1332(c) to require allegations of incorporation *and* principal place of business. *Moore v. Sylvania Elec. Prods., Inc.*, 454 F.2d 81, 84 n.1 (3d Cir. 1972). Consequently, plaintiffs' failure to allege diversity with respect to defendant's principal place of business renders the jurisdictional allegations deficient. Nevertheless, because the defect may have been due to an oversight, I will grant plaintiffs leave to amend to include the necessary averments rather than dismiss for lack of subject matter jurisdiction.

this diversity suit, does not clearly presage the application of section 402A to the situation at bar. Consequently, defendant's first argument directed to the scope of section 402A presents a question that is not easily answered. Neither defendant company nor the challenged instrumentality fits neatly into the definitions of "seller" and "product" shaped by the Pennsylvania courts.

### McKee as a Seller

■ Section 402A of the Restatement (Second) of Torts, which makes a seller engaged in the business of selling a product strictly liable for injuries that result from a defect in the product, was adopted by the Supreme Court of Pennsylvania in *Webb v. Zern*, 422 Pa. 424, 427, 220 A.2d 853, 854 (1966). Subsequent decisions have defined the contours of section 402A. The Pennsylvania courts have imposed strict liability for a defective product on all sellers in the distributive chain, *Bialek v. Pittsburgh Brewing Co.*, 430 Pa. 176, 187–88, 242 A.2d 231, 236 (1968), and have brought manufacturers of component parts, *Burbage v. Boiler Engineering & Supply Co.*, 433 Pa. 319, 324–25, 249 A.2d 563, 566 (1969), used products dealers, *Mixter v. Mack Trucks, Inc.*, 224 Pa.Super. 313, 315, 318, 308 A.2d 139, 140, 142 (1973), and lessors, *Francioni v. Gibsonia Truck Corp.*, 472 Pa. 362, 368–69, 372 A.2d 736, 739–40 (1977), within the sweep of section 402A. Moreover, under Pennsylvania case law, lack of privity does not bar recovery. *Salvador v. Atlantic Steel Boiler Co.*, 457 Pa. 24, 32–33, 319 A.2d 903, 907–08 (1974).

As these decisions illustrate, the attitude of the Pennsylvania courts has been more expansive than restrictive. The underlying policy has been to hold strictly liable for ensuing harm all suppliers of products who,

because they are engaged in the business of selling or supplying a product, have assumed a special responsibility toward the consuming public. *Francioni v. Gibsonia Truck Corp., supra*, 472 Pa. at 366, 372 A.2d at 738. Nevertheless, the textual limitation of section 402A—that the supplier be in the business of selling or supplying the product—has been applied to exclude from its reach the occasional seller, *McKenna v. Art Pearl Works, Inc.*, 225 Pa.Super. 362, 365 n.2, 310 A.2d 677, 679 n.2 (1973), and the supplier of services, *Lemley v. J & B Tire Co.*, 426 F.Supp. 1378, 1379 (W.D.Pa.1977).

■ Defendant argues that it comes within the recognized exceptions to the strict liability provisions. First, characterizing its agreement with U. S. Steel as a construction contract, McKee casts itself as a supplier of labor and services rather than the seller of a product. McKee notes that U. S. Steel provided the specifications for and fabricated several components of the blast furnace unit. In addition, the contract required McKee to submit all drawings to U. S. Steel for final approval.

These various factors do not, in my view, take defendant beyond the purview of section 402A. As the *Lemley* court acknowledged, "there has been no general judicial expansion of [section 402A] to include persons who supply a service." 426 F.Supp. at 1379. That court also noted, however, that a party who supplies a defective product while rendering a service may nevertheless be held accountable under section 402A for injuries attributable to the defective product. *Id.* Here, McKee unquestionably supplied services in the form of labor and engineering expertise. Yet, the fact remains that in the course of performing this "service," McKee supplied U. S. Steel with the injury-causing instrumentality.[3] Nor does

---

3. Because I characterize this transaction as a hybrid, with defendant supplying both services and the skip bridge, it is unnecessary to address plaintiffs' argument that the Pennsylvania courts would extend § 402A to design professionals, such as architects and engineers. *Cf. Francioni v. Gibsonia Truck Corp.*, 472 Pa. 362, 366–69, 372 A.2d 736, 738–40 (1977) (outlining policy considerations that warrant appli-

cation to lessor of defective product). *See generally* Note, *Liability of Design Professionals— The Necessity of Fault*, 58 Iowa L.Rev. 1221 (1973). I note, however, that the cases dealing with the strict liability of design professionals generally rely upon the services exception to § 402A. Consequently, where the architect or engineer simply provides the design or merely supervises, without actually participating in,

it help McKee to argue that U. S. Steel provided the specifications and retained final approval over all drawings for the skip bridge. Although reasonable reliance by a manufacturer on specifications supplied by the buyer may provide a defense in a negligence action or in a suit by the buyer against the supplier for indemnification, *see, e. g., Castaldo v. Pittsburgh-Des Moines Steel Co.*, 376 A.2d 88, 90 (Del.1977), several decisions have suggested that strict liability will attach to the supplier of a defective product even though the purchaser provided or approved the specifications. *See, e. g., Schreffler v. Birdsboro Corp.*, 490 F.2d 1148, 1150 (3d Cir. 1974); *Greco v. Bucciconi Engineering Co.*, 283 F.Supp. 978, 980 (W.D. Pa.1967), *aff'd*, 407 F.2d 87 (3d Cir. 1969); *Pust v. Union Supply Co.*, 561 P.2d 355 (Colo.App.), *rev'd on other grounds*, 572 P.2d 148 (Colo.1977). Accordingly, in view of the admonition by the Pennsylvania Supreme Court in *Bialek v. Pittsburgh Brewing Co., supra*, 430 Pa. at 187, 242 A.2d at 236, that the supplier need not have caused the defect, I conclude that McKee's reliance on U. S. Steel specifications will not insulate it from section 402A liability in this case.

 McKee also contends that it cannot be held strictly liable for the injuries here claimed because it is not engaged in the mass production or distribution of a product. Insofar as its argument is based upon the "occasional seller" exception, McKee misses the mark. The volume of a defendant's sales is irrelevant to characterization as a seller. "[I]t is sufficient . . that [the supplier] carried on an established and well-recognized kind of business which has been a regularly maintained activity on [its] part." *Stewart v. Uniroyal Inc. (No. 1)*, 72 Pa. D.&C.2d 179, 202 (C.P.Allegheny Cty. 1974), *aff'd*, 233 Pa.Super. 761, 339

A.2d 815 (1975). McKee is an engineering and contracting firm involved in the design and erection of plants for the basic process industries. It has, over the years, designed and assembled blast furnaces (and the various components thereof such as the skip bridge at issue here) for a number of companies. Affidavit of John Fagley (Doc. No. 27) ¶ 4. Obviously, McKee has "carried on an established and well-recognized kind of business," and would appear to merit characterization as a section 402A seller for purposes of this action.

### The Skip Bridge as a Product

Defendant argues that it cannot be so characterized, notwithstanding its long-term involvement in the design and erection of items like that here challenged. It contends that characterization as a section 402A seller presupposes the existence of a product and that the skip bridge at issue in this action is not a "product" as the Pennsylvania courts have comprehended that term. Describing the skip bridge as a structural component of the blast furnace, McKee urges that the decision in *Cox v. Shaffer*, 223 Pa.Super. 429, 302 A.2d 456 (1973), controls the question whether the skip bridge may be classified as a product.

 Unlike defendant, I am not at all persuaded that *Cox* compels the conclusion that the skip bridge is beyond the reach of section 402A. In *Cox*, the Superior Court of Pennsylvania held that "a silo constructed in place . . . is not a product within the intent and meaning of section 402A." *Id.* at 431, 302 A.2d at 457. The only similarity that I perceive between *Cox* and the action at bar is that both the silo and the skip bridge were "constructed in place." I cannot say that this factor, in and of itself, determines whether the skip bridge is a product. Indeed, if the point of assembly

---

the construction of the challenged product, he has not been held strictly liable; where, however, the professional actually assembles or erects the allegedly defective item, strict liability will attach. *See, e. g., LaRossa v. Scientific Design Co.*, 402 F.2d 937, 941–43 (3d Cir. 1968) (applying New Jersey law); *Stuart v. Crestview Mutual Water Co.*, 34 Cal.App.3d 802, 110 Cal.

Rptr. 543, 549 (1973); *Castaldo v. Pittsburgh-Des Moines Steel Co.*, 376 A.2d 88, 90–91 (Del. 1977); *City of Mounds View v. Walijarvi*, 263 N.W.2d 420, 424 & n. 4 (Minn.1978). *See generally* 2 L. Frumer & M. Friedman, Products Liability § 16A[4][b][ii], at 3B–52, nn. 16.4, 19.3 (1960).

were the decisive consideration, all pieces of industrial equipment too large or too cumbersome to be delivered preassembled would be excluded from section 402A. Clearly, the weight of authority is to the contrary. *See, e. g., Schreffler v. Birdsboro Corp., supra,* 490 F.2d at 1149–50; *Hoppe v. Midwest Conveyor Co.,* 485 F.2d 1196, 1198–99 (8th Cir. 1973); *Greco v. Bucciconi Engineering Co., supra,* 283 F.Supp. at 980; *Castaldo v. Pittsburgh-Des Moines Steel Co., supra,* 376 A.2d at 89–91; *cf. Pittsburgh-Des Moines Steel Co. v. Brookhaven Manor Water Co.,* 532 F.2d 572, 580 (7th Cir. 1976) (construing goods under Article 2 of U.C.C. to encompass one-million-gallon water tank constructed on premises of purchaser). Furthermore, whether the challenged item is affixed to real property and could therefore be designated as a fixture has also been held to be irrelevant to its classification as a product for purposes of section 402A. *E. g., Kaczmarek v. Mesta Machine Co.,* 324 F.Supp. 298, 300–01 (W.D. Pa.1971).

There is yet another reason for my skepticism about the precedential value of *Cox.* Although the superior court did not elaborate the basis of its decision, a controlling consideration appears to have been the court's conclusion that the silo was a "building." 223 Pa.Super. at 431, 302 A.2d at 457. As real property, in contradistinction to a chattel or a piece of equipment, the silo would be beyond the purview of section 402A by the very terms of chapter 14 of the Restatement, which includes section 402A. *Cox v. Shaffer,* 52 Wash.Cty.Rep. 122, 123–24 (Pa.C.P.1972); *see Lowrie v. City of Evanston,* 50 Ill.App.3d 376, 8 Ill.Dec. 537, 365 N.E.2d 923, 928–29 (1977) (garage is not product because building is outside scope of section 402A). *See generally* Restatement (Second) of Torts §§ 388–408 (liability of suppliers of chattels). The line between a building and a piece of equipment, drawn by both the superior court and the court of common pleas in *Cox,* is not as readily discernible in the instance of the skip bridge. Nor does defendant's designation of the skip bridge as a structure much advance the inquiry. I have only to review the cases

applying section 402A to items erected on site (cited *supra,* in ¶ 2 of this section) to conclude that the terms structure and product are not necessarily mutually exclusive.

Given the lack of clear precedent mandating the inclusion or exclusion of items like the skip bridge from section 402A, I would conclude that the skip bridge is closely analogous to a large piece of industrial equipment for which the supplier may be held strictly liable. I need not, however, definitively determine whether McKee is a seller and the skip bridge a product under Pennsylvania law, for even assuming that section 402A embraces McKee and the skip bridge, I conclude that the record on this motion for summary judgment will not support plaintiffs' theory of defective design.

### B. *The Existence of a Defect*

Plaintiffs peg their strict liability claim on the argument that the skip bridge was defectively designed because it lacked an adequate safety device. Affidavits and exhibits submitted by defendant establish that the skip bridge was originally designed and erected with a solid steel barrier which ran along the outer rail of the bridge. The guard plate extended to a height of approximately 25 inches from the top of the rail, effectively eliminating the possibility of inadvertent contact with the rails. Plaintiffs apparently do not dispute the initial existence of the guard plate, nor do they controvert defendant's assertion that had the guard plate been in place, Abdul-Warith's accident would not have occurred. Rather, their theory of defective design is premised on the inherent inadequacy of the guard plate and on the lack of a backup safety device.

### *The Inadequacy of the Guard Plate*

Plaintiffs contend that the guard plate was inadequate for two reasons: (1) because it was not designed to last the life of the bridge and (2) because it rotted out shortly after the bridge was assembled. Neither argument raises a material issue of fact that would mandate denial of defend-

ant's motion for summary judgment. Although in selecting a proper design a manufacturer must contemplate the "probable results of a normal use of the product or a use that can reasonably be anticipated," it has no obligation to supply a product with parts that will not wear out. *Kaczmarek v. Mesta Machine Co.*, 463 F.2d 675, 678–79 (3d Cir. 1972). Absent a contract to service, maintain, or replace worn parts, a supplier has no duty to guard against injury that results from wear and deterioration. *Id.* at 678. There is no express contract here, nor is there anything in this record that would counsel the implication of such an obligation in this instance. There has been no showing that the design concept of the skip bridge was one of unitary construction. To the contrary, the constituent elements of the skip bridge, including the guard plate, were replaceable and had, in fact, been replaced on an identical skip bridge at the U. S. Steel plant prior to Abdul-Warith's accident. Deposition of Richard P. Cheslock (Doc. No. 38) at 17. Where, as here, a replaceable device fails simply because it wears out, the fact that the life of the device is not coextensive with the life of the product cannot, in and of itself, support a finding of defective design. *See Kuisis v. Baldwin-Lima-Hamilton Corp.*, 457 Pa. 321, 335, 319 A.2d 914, 922 (1974) (manufacturers and sellers are not insurers of their products and are not liable for normal wear and tear or misuse, despite foreseeability).

▉ On the other hand, plaintiffs' alternative argument directed to the inadequacy of the guard plate—that the barrier deteriorated shortly after the blast furnace was put into use—could support the inference that the guard plate was not a proper safety device and that the skip bridge was therefore defectively designed. The penultimate factual question here would, of course, be whether the guard plate remained intact for a reasonable period of time. With respect to this issue, I advised plaintiffs at oral argument that their bare assertion that the guard plate rotted out early on could not provide the factual predicate for the desired inference. Rather than decide the issue on an inadequate record,

however, I gave plaintiffs ample time to submit additional material substantiating their contention. Unfortunately, their new submissions do not satisfy their burden on this motion for summary judgment.

▉ To demonstrate the existence of a material issue of fact with respect to the reasonable life of the guard plate, plaintiffs must show the actual or approximate date when the guard plate fell apart. This they have failed to do. The record reveals only that the guard plate was intact in 1953 and had deteriorated some time prior to Abdul-Warith's accident twenty-two years later in 1975. The deposition testimony of Richard P. Cheslock, upon which plaintiffs rely, adds nothing to the record. Cheslock testified that the No. 2 blast furnace, which comprised the unguarded skip bridge challenged here, had undergone major relines between 1953 and 1975. Deposition of Richard P. Cheslock (Doc. No. 38) at 41. He also testified that work was probably done on the skip bridge in question and that the original guard plate or part of it had been replaced "at some time." *Id.* at 41–43. This testimony merely reinforces what is already known, *i. e.*, that the guard plate wore out; it does not serve to pinpoint the time when that occurred, which is the crucial issue here. Where the only facts of record are that this guard plate deteriorated some time within a 22-year period, I could not permit a jury to speculate that the guard plate was an inadequate safety device for having failed to last a reasonable period of time. I therefore reject plaintiffs' argument that there is a material issue of fact with respect to the adequacy of the guard plate as a safety device.

### The Absence of a Backup Safety Device

In addition to the argument based on the inherent inadequacy of the guard plate, plaintiffs advance an alternative theory of defective design. They contend that the design of the skip bridge was defective because of defendant's failure to include a backup safety device, such as an audible alarm to warn of the skip car's approach. I

cannot accept this contention as a viable theory of recovery under section 402A within the context of this case.

If plaintiffs premise their argument on the inadequacy of the guard plate, it must, of necessity, fail. First, I have already concluded that there is no factual basis from which to infer that the guard plate was an inadequate safety device. Second, if the inadequacy of the guard plate as a safety device could be proved, the argument that the product lacked a secondary safety system would be superfluous to the issue of defective design.

It would appear that the failure to incorporate an alternative safety device could constitute a design defect only where the product, even with a functioning primary safety system, would nevertheless be unreasonably dangerous. Whether this is such a case presents an issue for my determination,[4] which I resolve in defendant's favor. I simply cannot say under the facts of this case—where problems with the guard plate, such as corrosion and deterioration, would be readily apparent and where the original guard, however short-lived, was replaceable—that the lack of a backup safety device rendered the skip bridge unreasonably dangerous.

Finally, plaintiffs' argument that, given the corrosive atmosphere of the skip pit, the problems with the guard plate were foreseeable, does not make the chosen design defective. *See Kuisis v. Baldwin-Lima-Hamilton Corp., supra,* 457 Pa. at 335, 319 A.2d at 922. As defendant quite properly argues, whether a different safety device might have been a better or preferable design under the circumstances, goes to the issue of due care in making that choice and sounds in negligence, not in strict liability.

For the foregoing reasons, I conclude that defendant is entitled to summary judgment on the section 402A and breach of warranty claims.

4. Because the issue of unreasonable danger goes to the applicability vel non of section 402A, the Pennsylvania supreme court has characterized the question as one of law to be

determined by the judge. *Azzarello v. Black Brothers Co.,* 480 Pa. 547, 556–58, 391 A.2d 1020, 1025 (1978).