**Rafael ACEVEDO and Esther Acevedo, Plaintiffs,**

v.

**START PLASTICS, INC. and Marchetta Elevator Co., Defendants.**

Civ. A. No. 91–CV–4952.

United States District Court, E.D. Pennsylvania.

Oct. 8, 1993.

Nancy J. Winkler, Weinstein, Goss, Katzenstein, Schleifer, & Eisenberg Assoc., Philadelphia, PA, for plaintiffs.

Arthur M. Toensmeier, Post & Schell, P.C., Thomas A. Whelihan, Post & Schell, P.C., Philadelphia, PA, for Start Plastics, Inc.

## MEMORANDUM

McGLYNN, District Judge.

This case comes before the court on Defendant Start Plastics, Inc.'s ("Start") Motion for Partial Summary Judgment on Counts V and VI of Plaintiffs' Complaint, and Start's Motion for Protective Order to preclude the deposition of Arthur Heppner. Plaintiffs allege that Start is liable based upon theories of strict product liability and breach of warranty as the seller and supplier of a defective conveyor system. For the reasons discussed below, Defendant Start's motion for Partial Summary Judgment is **GRANTED.** Defendant Start's Motion For Protective Order is **DISMISSED** as moot.

## BACKGROUND

On August 7, 1989, Plaintiff Rafael Acevedo was injured during the course of his employment at the Maggio Cheese Company ("Maggio") while attempting to clean a conveyor. Defendant Start designs and manufactures fiberglass products, including brine tanks, truck caps, sun visors, motorcycle

trailers, lawnmower parts, funeral vaults, and custom fiberglass applications.

When Defendant Start manufactured brine tank systems, it was its practice to supply them without conveyors. In March of 1988, however, Maggio and Defendant Start entered an agreement whereby Start would supply Maggio with a brine tank system complete with a conveyor for use in processing cheese. From the time Maggio agreed to that contract, it understood that Start did not design, manufacture or sell conveyor systems. (Dep. Tr. of Lorenzo P. Maggio, Oct. 15, 1992, at 11–12, 40–48.) As a concession to Maggio, who wanted to deal with only one vendor, Defendant Start contacted the Marchetta Elevator Company ("Marchetta"), who designed, manufactured, and installed the conveyor. *Id.* Thereafter, Defendant Start sold Maggio the complete brine tank and conveyor system. This was the first of three such complete systems ever sold by Defendant Start.

## DISCUSSION

### A. Summary Judgment

■ The issue in the instant case is whether by virtue of the March 1988 sale and two subsequent unrelated sales of conveyor systems, Defendant Start is engaged in the business of selling such equipment for purposes of imposing liability for product defects under section 402A of the Restatement (Second) of Torts and implied warranty liability under the Uniform Commercial Code. Under Federal Rule of Civil Procedure 56(c), summary judgment may be granted when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. This rule is a procedural device which enables the court to facilitate the resolution of a pending controversy without the expense and delay of conducting a trial when the critical facts of a case are not in dispute. *In Re School Asbestos Litigation,* 977 F.2d 764 (3d Cir.1992); *Big Apple BMW, Inc. v. BMW of North America, Inc.,* 974 F.2d 1358 (3d Cir.1992). For a dispute to be "genuine", the evidence must be such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct.

2505, 2510, 91 L.Ed.2d 202 (1986); *Williams v. West Chester,* 891 F.2d 458, 460 (3d Cir. 1989). To establish a genuine issue of material fact, the non-moving party must introduce evidence beyond the mere pleadings to create an issue of material fact of "an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *In Re Paoli R.R. Yard PCB Litigation,* 811 F.Supp. 1071 (E.D.Pa.1992). The burden of demonstrating the absence of genuine issues of material fact is initially on the moving party regardless of which party would have the burden of persuasion at trial. *Pennbarr v. Ins. Co. of North America,* 976 F.2d 145 (3d Cir.1992); *U.S. v. Premises Known as 717 Woodward Street,* 804 F.Supp. 716 (E.D.Pa.1992). Following such a showing in a case where the non-moving party is the plaintiff and thus bears the burden of proof, as here, plaintiff must present evidence through affidavits, depositions and/or admissions sufficient to establish the existence of every element essential to that party's case. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552.

■ In ruling on a motion for summary judgment, the court must consider the evidence presented in a light most favorable to the non-moving party (plaintiff here), *Matsushita Elec. Indus. Co. v. Zenith Radio Corp,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Williams v. New Castle County,* 970 F.2d 1260, 1264 (3d Cir.1992); *Boyle v. Governor's Veterans Outreach & Assistance Center,* 925 F.2d 71, 75 (3d Cir. 1991), must give that party the benefit of all reasonable inferences arising from that evidence, *Big Apple BMW,* 974 F.2d at 1368, and must take as true all allegations of the non-moving party that conflict with those of the movant. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. However, when the record will not support a rational finding that an essential element of the non-moving party's claim or defense exists, summary judgment must be entered for the moving party. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

■ In *Celotex*, the court held that the party moving for summary judgment and not bearing the burden of proof at trial, need not negate the other party's case. If the moving party demonstrates the absence of an essential element of the case of the opponent, who bears the burden of proof at trial, the court may discharge the moving party of its burden. That demonstration may be made without submission of affidavits, by reliance on pleadings, depositions, answers to interrogatories and admissions on file.

■ The principal issues that arise under Rule 56(c) are whether a factual dispute exists; whether the dispute is material to the outcome of the case; and whether the dispute is genuine. This interpretation and application of Rule 56 is a matter of federal law. *Farmland Industries v. Grain Bd. of Iraq*, 904 F.2d 732, 736 (D.C.Cir.1990). Although the characterization of issues and the determination of the materiality and of the sufficiency of the factual showing will often be intertwined with questions of state law, whether a trial is necessary is a matter of federal law. *Id.*

■ There is a spectrum ranging from fact to law in which a large continuum between the two extremes is occupied by mixed questions of fact and law and by questions of ultimate fact. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). At one extreme of the spectrum lie so-called historical facts; a thing done, an action performed, or an event or occurrence. *Id.* The resolution of a dispute over historical facts or the inferences to be drawn from them is a jury function. *Id.* At the other extreme, the court considers issues of law. *Id.* When facts material to the application of a pure rule of law are undisputed, as here, the application is a matter of law for the court. See *Edwards v. Aguillard*, 482 U.S. 578, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987) (When no dispute over the sufficiency of evidence establishing facts that control the application of the rule of law, summary judgment is the appropriate means of deciding the issue); *Heller v. Champion International Corp.*, 891 F.2d 432, 435 (2d Cir.1989) (When no dispute over historical facts, but over their legal significance, issue is appropriate for summary judgment); *Horton v. Taylor*, 767 F.2d 471, 478 (8th Cir. 1985) (Dispute over legal significance of undisputed facts appropriate for summary judgment).

No controversy exists as to whether Defendant Start delivered to Maggio, in one package, the brine tanks and conveyor system, or that on only two other occasions after the sale to Maggio did Start ever supply conveyor systems along with their brine tanks. The controversy exists as to how these three sales affect Defendant Start's status under § 402A of the Restatement (Second) of Torts and the Uniform Commercial Code. Therefore, this is a question of the legal significance of facts not in dispute and an appropriate issue for summary judgment.

## B. Strict Liability

■ Defendant Start moved for summary judgment on the ground that even if the conveyor system was defective, Start is not strictly liable for Plaintiff Acevedo's injury because Start is not engaged in the business of selling conveyor systems. Defendant Start asserts that its sale of the conveyor system was an "occasional" sale upon which strict liability may not be premised.

The Pennsylvania Supreme Court made § 402A of the Restatement (Second) of Torts the law of Pennsylvania with its decision in *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966). Section 402A imposes liability, without regard to privity of contract or the degree of care exercised by the defendant, on those who sell defective products that are unreasonably dangerous. Liability only attaches, however, if the seller is engaged in the business of selling the product that causes the harm. Comment f to section 402A makes clear that strict liability for product defect does not apply to "the occasional seller ... who is not engaged in that activity as a part of his business." Comment f does not, however, create a test of easy application for distinguishing the occasional seller from one engaged in the business of selling.

Comment f teaches that it is not necessary that the seller be engaged solely in the business of selling the defective product to incur strict liability, but contemplates a seller who deals in the sale of ancillary products on a continuing basis. The example given is that of the owner of a motion picture theater who also sells popcorn. In that case, the sale of popcorn is ancillary to operating a motion picture theater, but is also a continuing and regular part of the theater owner's business. "Occasional seller" status applies where "sales are so infrequent or sales efforts are so minimal that it can not be said that the seller has voluntarily assumed a special responsibility for product safety ... or that the seller is best able to spread the loss caused by the product's defects." *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1219 (5th Cir.1985).

 Defendant Start qualifies as an occasional seller and therefore cannot be held liable as a merchant or supplier of conveyor systems. Start was in the business of manufacturing and marketing fiberglass products. The three ancillary sales of conveyor systems are so tangential that they cannot be regarded as being a part of a line of goods sold in the ordinary course of its business. The test used for determining if a party is a seller for purposes of strict liability is whether "[i]t carried on an established and well recognized ... business which has been a regularly maintained activity on its part." *Abdul Arith v. Arthur G. McKee and Co.*, 488 F.Supp. 306 (E.D.Pa.1980). Start regularly sold fiberglass products and fiberglass brine tanks to cheese processors. On only three occasions did Start supply a brine tank and conveyor system as one complete package. These isolated sales cannot be said to demonstrate an established, recognized and regularly maintained activity on Start's part. The record shows that Start never advertized conveyor systems, nor did it initiate the sale of the conveyor system in question. It was the buyer who insisted on a single unit comprising the brine tank and conveyor system. If the Supreme Court of Pennsylvania were presented with the facts of this case I predict that the court would hold that Start cannot be found strictly liable under § 402A of the Restatement (Second) of Torts.

## C. BREACH OF WARRANTY

 Plaintiff alleges that the sale of the complete brine tank and conveyor system in one package is covered by the Uniform Commercial Code, and carries with it an implied warranty of merchantability.[1] Start cannot be held liable on a theory of breach of warranty under the Uniform Commercial Code for the same reasons that it can not be held liable pursuant to strict liability under the Restatement: because Start is not a merchant with respect to the conveyor system.

The Uniform Commercial Code provides that "a warranty that the goods shall be merchantable is implied in a contract with respect for their sale if the seller is a merchant with respect to goods of that kind." 13 Pa.C.S.A. § 2314(a) (Purdon 1984). The code defines "merchant" as a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the goods involved. 13 Pa.C.S.A. § 2104 (Purdon 1984). Comment 3 to section 2314 makes it clear that "[a] person making an isolated sale of goods is not a 'merchant' within the meaning of the full scope of this section and, thus, no warranty of merchantability would apply."

Defendant Start did not advertise or hold itself out as a manufacturer or supplier of conveyor systems, and conveyor systems were not a part of Start's regular established business of manufacturing fiberglass applications. (Dep. Tr. of Stephan Van Pay, President, Start Plastics, Inc., May 24, 1993, at 97–99.) Maggio understood that Defendant Start did not design, manufacture, or sell conveyor systems, and at trade shows which Start attended, the displayed models of brine tanks contained no conveyor systems. (Dep. Tr. of Lorenzo P. Maggio, Oct. 15, 1992, at 35–36.) As such, Defendant Start did not deal in goods of the kind (conveyor systems), nor did it otherwise hold itself out as having

---

1. It is undisputed that Start made no express warranties as to the conveyor system. (Pls.['] Resp. to Def.['s] Mot. for Partial Summ. J. at 1).

knowledge or skill peculiar to conveyor systems. Therefore, Defendant Start is not a merchant as contemplated by the Uniform Commercial Code and is not liable for breach of implied warranty.

## D. PROTECTIVE ORDER

Plaintiffs noticed the deposition of Arthur Heppner, former Secretary and Vice President of Start Plastics on August 9, 1993. (Def.['s] Mot. for Protective Order at 2). The deposition was to take place on September 30, 1993 in Philadelphia, Pennsylvania. *Id.* Discovery was sought in relation to Plaintiffs' Count V product liability claim. (Pls.['] Opp'n Mem. at 1). Counts V and VI of Plaintiffs' complaint have been resolved by summary judgment in favor of Defendant; therefore no discovery on Count V is necessary. Defendant's Motion for Protective Order is moot.

## CONCLUSION

Because Start Plastics is not in the business of supplying conveyor systems for purposes of strict product liability, nor is it a merchant of conveyor systems for purposes of the Uniform Commercial Code, summary judgment will be entered in favor of Defendant Start and against Plaintiff on Counts V and VI of Plaintiff's Complaint. The award of partial summary judgment renders Defendant Start Plastics' Motion for Protective Order moot.

## ORDER

**AND NOW,** this 8th day of October, 1993, upon consideration of Defendant Start Plastics, Inc.'s Motion for Partial Summary Judgment and Plaintiffs' responses thereto, and Defendant Start Plastics Inc.'s Motion for Protective Order and Plaintiff's responses thereto; it is **ORDERED** that:

(1) Defendant Start Plastics, Inc.'s Motion for Partial Summary Judgment is **GRANTED;** and Counts V and VI of Plaintiffs' Complaint are dismissed, with prejudice; and

(2) Defendant Start Plastics, Inc.'s Motion for Protective Order is dismissed as Moot.