### Gerhart v. Don Lengle Inc.

C.P. of Berks County, no. 5727-93 A.D. 98-8788.

*Daniel S. Weinstock,* for plaintiff.
*Barry W. Sawtelle,* for defendant Don Lengle.
*Edwin L. Stock,* for defendant Reading Hospital.

SCHAEFFER, *S.J.,* March 19, 1999—This is a product liability action arising out of decedent Carolyn Gerhart's October 1991 admission to the Reading Hospital and Medical Center. Defendant Don Lengle Inc. appeals the judgment entered against it in this matter after its motions for post-trial relief were denied. Plaintiff Sheila Gerhart cross-appeals this court's determination of delay damages on the amount of the verdict as molded.

On November 5, 1993, plaintiff Sheila Gerhart commenced this action by writ of summons, and thereafter filed her complaint on March 4, 1994.[1] Defendant Don Lengle Inc. filed its answer with new matter on Novem-

---

1. Prior to filing this action, plaintiff filed suit against the Reading Hospital and Medical Center and that case was ultimately settled. On August 31, 1995, the plaintiff signed a joint tort-feasor's release with the Reading Hospital and Medical Center.

ber 14, 1994. Plaintiff filed her reply to new matter on January 31, 1995. On February 24, 1995, defendant Don Lengle Inc. filed a motion for summary judgment. After hearing argument, this court denied defendant's motion on July 12, 1995. On January 18, 1996, defendant Don Lengle Inc. was granted leave, nunc pro tunc, to file a joinder complaint, for contribution and indemnification, against the Reading Hospital and Medical Center. Said complaint was filed on January 26, 1996, and answered by said additional defendant on February 13, 1996. Defendant was also granted leave to file amended new matter and to plead in its defense the joint tort-feasor release signed by plaintiff and additional defendant Reading Hospital and Medical Center.[2] A jury trial was held August 3, 1998 through August 7, 1998. After a jury verdict in favor of the plaintiff and against the defendant Don Lengle Inc., and the Reading Hospital and Medical Center,[3] plaintiff timely filed post-trial motions for delay damages, in the amount of $194,778.68, against defendant Don Lengle Inc. This court held a hearing on plaintiff's post-trial motion for delay damages on October 5, 1998, and subsequently entered a molded verdict awarding plaintiff $97,389.34 in delay damages against defendant Don Lengle Inc. Defendant Don Lengle Inc. filed post-trial motions for judgment n.o.v. and for a new

2. On March 15, 1996, the court signed a confidentiality order in favor of the Reading Hospital and Medical Center, requiring the terms of the settlement made between plaintiff and additional defendant be kept confidential and the files be marked sealed.

3. The jury award was $225,000 under the survival action and $400,000 under the wrongful death action. The jury also allocated 50 percent liability to defendant Don Lengle Inc. and 50 percent liability to the additional defendant Reading Hospital and Medical Center.

trial on August 14, 1998. The court denied defendant Don Lengle Inc.'s post-trial motions on December 16, 1998. On December 16, 1998, judgment was entered against defendant Don Lengle Inc., and for plaintiff, in the amount of $112,500 plus delay damages of $35,060.16 under the Survival Act, and in the amount of $200,000 plus delay damages of $62,329.18 under the Wrongful Death Act, and against defendant Don Lengle Inc. and for additional defendant Reading Hospital and Medical Center, in accordance with the terms of the joint tort-feasor release, for costs.

The facts leading up to this dispute are as follows: plaintiff/appellant's decedent was admitted to the Reading Hospital and Medical Center with an anterior communicating artery aneurysm. Dr. Craig H. Johnson performed a craniotomy. After the surgery, the patient was in a confused, disoriented state, but was recovering from the operation. Because of her disoriented state, the patient kept getting out of her bed and had fallen out at one point. The nurses at the hospital put the patient in various restraints and ultimately put her in a "safety bed" to restrain her. The "safety bed" in question was manufactured and sold to the Reading Hospital by defendant/appellant Don Lengle Inc. On November 6, 1991, the patient popped open the defective zipper-snap locking mechanism on the safety bed, again got out of bed and fell to the floor, striking her left forehead. As a result of the fall, the decedent lapsed into a state of depressed consciousness which lasted approximately 19 months. The patient subsequently died.

Appellant Don Lengle Inc. raises three issues for review:

"(A) The trial court erred in denying defendant's motion for post-trial relief and in permitting the testimony

of Charles J. Goedken as an engineering expert when the witness lacked the qualifications necessary to testify as an expert witness on the design and manufacturing issues of the present case.

"(B) The trial court erred in failing to grant defendant's motion for compulsory nonsuit, defendant's motion for directed verdict and defendant's motion for post-trial relief when the evidence failed to establish that defendant was a seller of the product in question within the meaning of Pennsylvania law imposing strict liability upon sellers of products and under Restatement (Second) of Torts §402A.

"(C) The court erred in failing to charge the jury with regard to the occasional seller defense to strict product liability in the form requested by defendant in its proposed points for charge, thereby denying the jury the opportunity to decide, as a question of fact, whether Don Lengle Inc. was a seller of the product in question within the meaning of Pennsylvania law imposing strict liability upon sellers of products and under Restatement (Second) of Torts §402A."

Cross-appellant Sheila Gerhart raises one issue on appeal:

"The trial court erred in computing plaintiff's delay damages based upon the amount of the verdict which plaintiff is entitled to collect from defendant Don Lengle Inc. when the proper measure of delay damages would have been the amount of the jury verdict, in accordance with Pennsylvania Rule of Civil Procedure 238 and *Woods v. PennDOT,* 531 Pa. 295, 612 A.2d 970 (1992)."

Initially, the court will address the issues presented by defendant Don Lengle Inc.:

Appellant first alleges that the court erred in permitting Charles Goedken P.E. to testify as an expert in the

fields of civil and safety engineering. This is not so. It is well established in this Commonwealth that the standard of qualification of an expert is a liberal one.[4] "The test to be applied when qualifying an expert witness is whether the witness has *any* reasonable pretension to specialized knowledge on the subject under investigation. If he does, he may testify and the weight to be given to such testimony is for the trier of fact to determine." *Miller v. Brass Rail Tavern Inc.,* 541 Pa. 474, 481, 664 A.2d 525, 528 (1995), citing *Commonwealth v. Gonzalez,* 519 Pa. 116, 128, 546 A.2d 26, 31 (1988); *Kuisis v. Baldwin-Lima-Hamilton Corp.,* 457 Pa. 321, 338, 319 A.2d 914, 924 (1974). A witness may testify as an expert if his or her experience or education logically or fundamentally embraces a matter at issue. *Montgomery v. South Philadelphia Medical Group Inc.,* 441 Pa. Super. 146, 656 A.2d 1385 (1995). The admission of expert testimony is within the discretion of the trial court. *Barrack v. Kolea,* 438 Pa. Super. 11, 651 A.2d 149 (1994).

Mr. Goedken was well qualified as a safety expert. His qualification was based on, inter alia, his receiving a bachelor degree in civil engineering in 1974 from the University of Detroit, becoming a registered professional engineer in Pennsylvania since 1980, as well as in Virginia, Maryland, New Jersey and the District of Columbia. Mr. Goedken's continuing professional education was in the area of safety engineering and included coverage of fall protection, safety belts and life lines, which included safety products such as latching mechanisms. Mr. Goedken was a member of the American Society of

---

4. The new Pennsylvania Rules of Evidence had not then gone into effect. They first became effective October 1, 1998.

Safety Engineers as well as the American Society for Testing and Materials, which covered products with latching mechanisms. Mr. Goedken examined the safety bed in question and testified that examining and evaluating the safety bed in question, in order to address its safety characteristics, was within his field of expertise, based upon the engineering principles involved, and his experience and training. (N.T. pp. 133-53; plaintiff's exhibit 14.)

Mr. Goedken had a reasonable pretension to specialized knowledge on the subject of safety mechanisms. The matter at issue was whether or not the "safety bed" was defective and that involved an analysis of the safety mechanism required for the bed's intended use. Mr. Goedken was duly qualified to give an expert opinion with respect to basic safety engineering principles as they applied to the particular design and manufacture of the "safety bed" at issue.

Whether or not a witness offered by a party as an expert in a particular field qualifies as an expert and will be permitted to testify as an expert is a matter within the sound discretion of the court; the trial court's determination will not be overturned except for a manifest abuse of that discretion. In the case at bar, the court acted well within the limits of its discretion.

Second, the next two errors asserted by appellant Don Lengle Inc. involve the "occasional seller" defense, under the Restatement (Second) of Torts §402A. Section 402A of the Restatement (Second) of Torts[5] was adopted

---

5. Section 402A provides that:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to

by the Pennsylvania Supreme Court in *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966). Section 402A makes it clear that, in order for strict liability to attach for harm caused by an allegedly defective product, the party who placed the product in the stream of commerce must be one who "is engaged in the business of selling such a product." Comment f states that the rule applies to any person engaged in the business of selling products for use or consumption. It is not necessary that the seller be engaged solely in the business of selling such products.

Appellant alleges that it was an "occasional seller," and therefore Rule 402A does not apply. Comment f to the rule states that an occasional seller is one "who is not engaged in that activity as a part of his business." [6] The comment goes on to state:

"The rule does not, however, apply to the occasional seller of food or other such products who is not engaged in that activity as a part of his business . . . The basis for the rule is the ancient one of the special responsibility

---

liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it was sold.

"(2) The rule stated in subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

6. We note that the Restatement (Third) of Torts: Products Liability §1, under comment c, *One engaged in the business of selling or otherwise distributing,* also states that the rule does not apply to a noncommercial seller and does not cover occasional sales outside the regular course of the seller's business.

for the safety of the public undertaken by one who enters into the business of supplying human beings with products which may endanger the safety of their persons and property, and the forced reliance upon that undertaking on the part of those who purchase such goods."

The comment gives an example of an "occasional seller" as the owner of an automobile who sells it to his neighbor, or even to a dealer, although he knows that the dealer plans to resell it.

The Pennsylvania Supreme Court has not specifically adopted the "occasional seller" exception discussed in comment f, but only noted the exception in a footnote in *Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 93 n.3, 337 A.2d 893, 898 n.3 (1975). The Supreme Court noted that occasional suppliers who were not in the business of selling or supplying such products were not "sellers" subject to strict liability. *Id.* The Pennsylvania Superior Court accepted the occasional seller defense to a product liability claim in *McKenna v. Art Pearl Works Inc.,* 225 Pa. Super. 362, 365 n.2, 310 A.2d 677, 679 n.2 (1973). In *McKenna,* the plaintiff/employee was injured while using a defective punch press bought by her employer, a button company. *Id.* at 363, 310 A.2d at 678. The Superior Court held that strict liability did not attach to the "seller" because the corporation that sold the defective punch press was selling it as part of a sale of its corporate assets, in an effort to terminate its business. *Id.* at 365, 310 A.2d at 679-80. The court found that the "seller" of the punch press was not in the business of selling punch presses, but was itself a button manufacturer. *Id.* at 365 n.2, 310 A.2d at 679 n.2.

Appellant cites *Acevedo v. Start Plastics Inc.,* 834 F. Supp. 808 (E.D. Pa. 1993) and *Abdul Warith v. Arthur*

*G. McKee and Co.,* 488 F. Supp. 306 (E.D. Pa. 1980) for the proposition that a manufacturer is a seller only if the manufacturer has marketed and sold the product in question through an established and well-recognized business which has been a regularly maintained activity on its part. However, we note that in *Acevedo,* the court found that the defendant qualified as an "occasional seller" of the conveyor system because it was in the business of manufacturing and marketing fiberglass products, not conveyor systems. The court found that the three ancillary sales of conveyor systems were so tangential that they could not be regarded as being a part of a line of goods sold in the ordinary course of its business. *Id.* at 812. In *Abdul Warith,* the court opined that the attitude of the Pennsylvania courts has been more expansive than restrictive in defining the contours of section 402A. *Id.* at 310. The court found that the three factors cited by the defendant did not take the defendant beyond the purview of section 402A: (1) that it was a supplier of labor and services rather than a seller of the product, (2) that the buyer supplied the specifications for the blast furnace unit, and (3) that the buyer retained final approval on all drawings. *Id.* The court opined that, "the fact remains that in the course of performin this 'service,' [defendant] supplied [the company] with the injury-causing instrumentality." *Id.*

Don Lengle Inc. was in the business of producing, selling and supplying custom-made canvas products. Producing custom canvas products was an established, regularly maintained commercial activity on the part of Don Lengle Inc. It engaged in the activity of making and selling 10 custom-made canvas bed canopies, or "safety beds," to the Reading Hospital as a part of its regular

business. (N.T. 8/3/98, vol. I, pp. 29, 33-37, 221, 224-27; plaintiff's exhibits 21, 22.) Therefore, Don Lengle Inc. did not qualify as an "occasional seller." It is of no consequence in a strict liability action that the Reading Hospital supplied the specifications for the canvas "safety beds," or contracted with Don Lengle Inc. for its service in making the canvas product according to the hospital's needs.

Appellant also asserts that it was error for the court not to charge the jury on the "occasional seller" defense. Don Lengle Inc. did not present sufficient evidence that would support the "occasional seller" defense, and therefore the court did not err by not charging the jury on this point.

Finally, plaintiff Sheila Gerhart asserts that the court erred in its calculation of delay damages, based upon the amount of the verdict that the plaintiff was entitled to collect from Don Lengle Inc., when the proper measure of delay damages should have been the amount of the jury verdict. We disagree.

In a case where there is more than one defendant, and a settlement is reached with less than all defendants, the nonsettling defendant's liability for delay damages under Rule 238(a) is based only upon that portion of the compensatory damages award which such nonsettling defendant is required to pay, rather than the total amount of the compensatory damages award to the plaintiff. *Walton v. Avco Corp.,* 383 Pa. Super. 518, 550-51, 557 A.2d 372, 389 (1989), citing *Baciotti v. Simmons,* 346 Pa. Super. 23, 498 A.2d 1351 (1985); *Hughes v. GAF Corporation,* 364 Pa. Super. 311, 317-18, 528 A.2d 173, 176 (1987) (and cases cited therein), *appeal denied,* 517

Pa. 623, 538 A.2d 876 (1988); Goodrich-Amram 2d §238(a):6.

Plaintiff Sheila Gerhart cites *Woods v. PennDOT,* 531 Pa. 295, 612 A.2d 970 (1992) in support of her argument that the court erred in assessing the delay damages on less than the full jury verdict. In *Woods,* the Pennsylvania Supreme Court upheld the assessment of delay damages on the full jury verdict of $1.5 million under circumstances where the Commonwealth had not made an adequate settlement offer[7] and did not settle with the plaintiff. *Id.* at 299, 612 A.2d at 972. The Supreme Court reviewed the history of Rule 238 and opined that the purpose of the rule was to both compensate the plaintiff for delay in receiving his or her recovery and to encourage settlements. *Id.* at 300, 612 A.2d at 972. The court noted that, under the explanatory comments to Rule 238, damages for delay are not to be awarded after the date of a defendant's offer when the court determines that the offer was the full amount available for payment, and thus, in statutory cap cases, the obligation for the payment of delay damages would cease at the time the statutory cap was tendered. *Id.*

Additional defendant Reading Hospital made an adequate settlement offer and did settle with the plaintiff, and the plaintiff agreed that her damages would be reduced by the additional defendant's pro rata share of legal liability. The joint tort-feasor release signed by the

---

7. The Commonwealth, under the Sovereign Immunity Act, was subject to a $250,000 statutory cap on its liability for damages, but made a settlement offer of only $65,000. *Woods,* 531 Pa. at 296, 612 A.2d at 970.

plaintiff stated that "if it should be determined that Don Lengle Inc. is/are jointly or severally liable to the plaintiffs with any person or entity herein released, in tort or otherwise, the claim against and damages recoverable from Don Lengle Inc. *shall be* reduced by the amount determined by the sum of the pro rata share of legal responsibility or legal liability for which the parties herein released are found to be liable as a consequence of the aforesaid medical care or treatment." (Joint tort-feasor release, p. 2; defendant's exhibit 5.)

The jury awarded a total verdict of $625,000 in damages to the plaintiff. The jury assessed legal liability at 50 percent for Don Lengle Inc. and 50 percent for the Reading Hospital and Medical Center. The additional defendant Reading Hospital tendered its offer to the plaintiff upon the signing of the joint tort-feasor release on August 31, 1995 in exchange for a full release and discharge of the additional defendant. Plaintiff agreed to accept said sum in full accord and satisfaction of any damage claims against the Reading Hospital. In accordance with the verdict, and the release, the compensatory damages required to be paid by defendant Don Lengle Inc. were reduced by the settling defendant's pro rata share of 50 percent, and were therefore reduced to $312,000. Nonsettling defendant Don Lengle Inc.'s liability for delay damages was properly based on that portion of the compensatory damages award that Don Lengle Inc. was required to pay.

For the aforementioned reasons, the court respectfully requests that the Superior Court affirm the judgment entered in this case.